**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**BARBARA JO CLAUSSEN,**

    Plaintiff,                          Civil Action No. 2:16-cv-00092

v.                                     JUDGE WAVERLY D. CRENSHAW, JR.
                                          MAGISTRATE JUDGE MONA K. MAJZOUB
**COMMISSIONER OF**
**SOCIAL SECURITY,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Barbara Jo Claussen seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Judgment on the Administrative Record and her Memorandum in Support of the Motion. (Docket nos. 9, 10.) Defendant filed a Response opposing Plaintiff's Motion. (Docket no. 11.) This case has been referred to a Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B). (Docket no. 12.) Pursuant to Administrative Order No. 24 entered on January 23, 2018, the undersigned Magistrate Judge has been assigned to this case and is authorized to hold court and perform other judicial duties in the Middle District of Tennessee under 28 U.S.C. §§ 636(a), (b), and (c). The undersigned has reviewed the pleadings and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Judgment on the Administrative Record (docket no. 9) be **DENIED**, the Commissioner's final decision be **AFFIRMED**, and Plaintiff's Complaint (docket no. 1) be **DISMISSED**.

**II.    PROCEDURAL HISTORY**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on August 17, 2012, alleging that she has been disabled since October 1, 2011, due to arthritis and degenerative disc disease in her back and neck; and scoliosis, stenosis, and facet syndrome in her back.  (TR 67, 140-46, 161.)  The Social Security Administration denied Plaintiff's claims initially on January 3, 2013, and again upon reconsideration on May 8, 2013, after which Plaintiff requested a *de novo* hearing.  (TR 59-78, 96-97.)  On August 11, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Andrea L. Wirth.  (TR 27-58.)   The ALJ subsequently issued an unfavorable decision on Plaintiff's claims on October 14, 2015, and the Appeals Council declined to review the ALJ's decision.  (TR 1-3, 11-20.)  Plaintiff then commenced this action for judicial review and filed a Motion for Judgment on the Administrative Record, which is currently before the Court.

**III.   HEARING TESTIMONY AND MEDICAL EVIDENCE**

Plaintiff (docket no. 10 at 2-13) and the ALJ (TR 16-20) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant adopts the ALJ's recitation of the facts. (Docket no. 11 at 2-3.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, in lieu of re-

summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of October 1, 2011 through the date last insured of September 30, 2014. (TR 13.) Next, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease in the cervical spine, status post C6-7 discectomy and fusion in 1995; scoliosis; lumbar and cervical spondylolisthesis; lumbar degenerative disc disease; osteoarthritis; angina; and mixed connective tissue disease. (TR 13-15.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15.) The ALJ then found that, through the date last insured, Plaintiff had the following residual functional capacity (RFC):

> Claimant had the residual functional capacity to lift and carry ten pounds occasionally, stand or walk two hours total in an eight-hour day and sit eight hours in an eight-hour day. She can occasionally climb ramps and stairs, balance, stoop and reach above shoulder level bilaterally. She should never climb ladders, ropes or scaffolds, kneel, crouch or crawl.

(TR 15-19.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as a surgical coordinator. (TR 19-20.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from October 1, 2011, through the date last insured of September 30, 2014. (TR 11, 20.)

3

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ did not properly consider Plaintiff's complaints of disabling pain in assessing Plaintiff's credibility. (Docket no. 10 at 13-19.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight." SSR 96–7p.[1] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ explicitly considered and summarized Plaintiff's subjective complaints of pain in her decision:

> On a scale of one to ten, with ten being the worst pain, her average daily pain was six to seven. She denied that this pain level had changed since October 2011. She reported that if she did not do anything, she could keep her pain at a level of

---

[1] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

7

> five to six, but if she walked more than ten minutes, it would get up to a level of eight to nine. She related that when she got up in the morning, it was the best she felt all day, and he [sic] pain was at a level of two. She stated that by the time she finished cooking dinner, she could not walk; she had tears in her eyes; the pain went down her legs, and she would wet herself if she did not sit down. She said that the Tramadol took the edge off her pain, from a level of eight to six, but [she] would wait to take the Tramadol after she went home from work.

(TR 16.)

The ALJ subsequently found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her pain and other symptoms were not entirely credible. (TR 17.) The ALJ explained that she "has no doubt that the claimant experiences some level of pain, but her complaints are disproportionate to the treatment notes, extent of treatment she has obtained, examination findings and some of her reported activities." (TR 17.) In support of this statement, the ALJ discussed several of Plaintiff's medical records. For example, the ALJ pointed out that Plaintiff consistently reported feeling well to her treating physicians despite sometimes reporting pain levels of seven and eight on a scale of ten. (TR 17.) The ALJ also pointed out that the findings of Plaintiff's November 2012 consultative examination were relatively benign. (TR 17.) And the ALJ noted that when Plaintiff saw her rheumatologist, Mohammad Ali, M.D., in January 2014, Plaintiff reported that the medication he prescribed was "really helping her joints a lot," and she stated that her pain had been at a level five. (TR 18 (citing TR 443).) Additionally, the ALJ noted that the examination findings at Plaintiff's office visits with Dr. Ali from July 2013 to May 2015 were generally benign. (TR 18.) The ALJ also cited Plaintiff's records from her treatment with her primary care physician, Gary Gallant, M.D., pointing out that when Plaintiff saw Dr. Gallant for a follow-up regarding her back pain in January 2013, she reported that she felt well, she did her exercises daily, and she had no complaints. (TR 18.)

Next, the ALJ discussed Plaintiff's reported activities of daily living as follows:

> Some of the claimant's activities are inconsistent with her reported pain levels and extent of limitation. For instance, the claimant testified that she drove two to three times a year, by herself, to Virginia to visit her mother; and also drove three times a year to Florida by herself to visit her daughter and grandchildren. This much driving is not consistent with her testimony that she could not sit for six to eight hours. The claimant testified that she had volunteered until recently at an animal rescue shelter, where she picked up small dogs, had to bend to feed them and had to put them in and out of crates. The claimant testified that she read "a lot," which indicates that she can maintain concentration, persistence and pace adequately to read, which is not consistent with disabling pain.

(TR 18.) The ALJ then concluded her assessment of Plaintiff's credibility with a lengthy discussion:

> The undersigned finds the claimant's allegations regarding her limitations less than fully credible. The treatment notes and examination findings simply do not support the degree of limitation that the claimant alleges. In addition, there are a number of inconsistencies that detract from the claimant's credibility. The claimant testified that she had urinary incontinence due to her pain, yet during office visits with Dr. Gallant, the claimant consistently denied having urinary incontinence (Exhibits 13F, pages 9, 13, 14)[.] The claimant testified that she walked with a limp, yet treatment notes show that she has a normal gait. The claimant testified that she quit using Tramadol because she did not want to get "hooked" on it but then admitted she knew it was not a narcotic (so no addiction potential), which is contradictory. Physical therapy records show that the claimant had only partial compliance with the therapy program during treatment in February 2013 (Exhibits 6F and 7F), which is inconsistent with the degree of pain she has alleged. As previously mentioned, the claimant testified that she drove by herself to Virginia two or three times a year to visit her mother, and also drove by herself to Florida three times a year to visit her daughter and grandchildren, which is not consistent with her testimony that she could not sit for six to eight hours. The claimant's activities as a volunteer working with rescued dogs until recently are inconsistent with the degree of pain and extent of limitation she has alleged herein. At the hearing, the claimant denied walking her dog, yet when she was seen by Dr. Gallant in February 2015 she reported she was exercising and even walking her dog uphill (Exhibit 13F, page 11). The claimant's ability to read "a lot," is not consistent with disabling pain. The claimant testified that she had ruptured and herniated discs, yet none of the radiological studies mention such conditions. The claimant testified that her muscle relaxer made her feel drowsy, but there is no indication in the medical records that the claimant complained of such to Dr. Gallant, who prescribed this medication to her.

9

(TR 18-19.)

Plaintiff argues that in making this adverse credibility determination, "the ALJ focused on a few points to the exclusion of the thrust of the substantial evidence" in this matter. (Docket no. 10 at 17.) In support of this argument, Plaintiff cites to several examples of evidence that are favorable to her credibility, like portions of her hearing testimony, her function report, and records from her treatment with Drs. Gallant and Ali in 2012 and 2013. (*Id*. at 15, 16, 17-18.) It is true that the ALJ did not explicitly discuss all of the evidence cited by Plaintiff in support of her position. But "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). In making the instant argument, Plaintiff essentially points to evidence in the record that could support a determination contrary to the ALJ's and invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ; but it is not the court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). The evidence cited by Plaintiff does tend to support her assertions, but there is also substantial evidence supporting the ALJ's conclusion. And if the ALJ's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90. Therefore, this issue falls within the ALJ's zone of choice, *see Mullen, supra*, and her adverse assessment of Plaintiff's credibility should not be disturbed on this basis.

Plaintiff also argues that the ALJ mischaracterized her keyboarding abilities as well as the limited volunteer work that she performed at the animal rescue. (Docket no. 10 at 18.) The ALJ summarized Plaintiff's testimony regarding her keyboarding abilities as follows:

> She said that she only had problems with keyboarding if she were on the computer for more than 30 minutes. She reported that she had a cream, Voltaren, which helped the pain in her hands, and after using the cream, she could resume keyboarding.

(TR 16.) Plaintiff argues that "she actually testified [that] she cannot be on a keyboard for more than a half-hour without her hands getting stiff and causing problems with bending her fingers. If she uses Voltaren cream **and if she rests her hands an hour**, she can do some more." (Docket no. 10 at 18 (emphasis in original) (citing TR 43).) Indeed, Plaintiff testified, in relevant part:

> Q   And if you were on [the keyboard] a half-hour, could you rest and then get back on it some more?
>
> A   Yeah, as long as the rest is sufficient. I have a cream I can use. It's called Voltaren, and if I put that on the hands, it will start easing them up, and it helps with the aching. It doesn't do anything for the swelling, but it helps with the aching, and then – so, if I took like an hour, then I could go back and do some more.

(TR 43.)

A review and comparison of the ALJ's summary of Plaintiff's hearing testimony regarding her keyboarding abilities with Plaintiff's argument and the hearing transcript, however, reveal that the ALJ did not mischaracterize Plaintiff's testimony; the ALJ merely omitted from her summary the rest period that Plaintiff required between taking Voltaren and resuming keyboarding. This omission is not an overt error, as an ALJ is not required to cite the record verbatim in her decision. *See Kornecky*, 167 F. App'x at 507-08. Moreover, Plaintiff does not proffer any developed argument regarding how or why the ALJ's omission in this regard is material to the ALJ's credibility assessment or to any other aspect of the ALJ's decision. Notably, the ALJ did not discount Plaintiff's credibility on the basis of her keyboarding abilities, or lack thereof. Plaintiff has failed to demonstrate any reversible error here. "[I]ssues adverted

to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).

With regard to her volunteer work for the animal rescue, Plaintiff asserts that she testified that she had to work in tandem with a younger person because she could not lean over to get a dog out of a lower crate. (Docket no. 10 at 18.) Plaintiff argues that the ALJ mischaracterized her testimony when the ALJ said that Plaintiff testified that she bent over to feed the dogs. (*Id.* (citing TR 18, 38).) In fact, the ALJ summarized Plaintiff's volunteer work as follows:

> The claimant testified that she had volunteered until recently at an animal rescue shelter, where she picked up small dogs, had to bend to feed them and had to put them in and out of crates.

(TR 18.) According to the hearing transcript, Plaintiff testified that the last time she did any volunteer work for the animal rescue was probably about a year before the August 2015 hearing. Plaintiff then provided the following testimony:

> A At that time, I was going in when there were rescues. I would go in and – you help feed the animals. I never could do the weight of the large animals, but I could – the small dogs. I could help get them out and exercise them, what they call, socialize them. Hold them and get them used to human tough [sic], especially, if they had come from puppy mills. That kind of thing, but that requires leaning to get them in and out of crates, and I got to the point where I couldn't do that.
>
> Q All right. And, so, from 2011 until last year when you last worked with that or volunteered with that, I guess, how extensive was your volunteering with that?
>
> A The most I could do is try to put in a three – three-hour shift, perhaps, in the morning. And then I'd have them put me with somebody who was younger, and they would take care – they stack the crates, too. So there's a bottom crate and a top crate. And the person they'd assign me with would take care of all the bottom crates, so I didn't have to lean over, and I'd take the top crates. But

slowly, like I say, it just got to the point I just couldn't even do that amount of help. So, I wasn't being helpful anymore.

(TR 37-38.)

In the first paragraph cited above, Plaintiff seemingly testified that in August 2014, she was helping to feed, exercise, and socialize small dogs, which required some leaning to get them in and out of crates. (TR 37.) But then she testified that from 2011 to August 2014, the most she could do was handle the dogs in the top crates while another person handled the dogs in the bottom crates so that she didn't have to lean over. (TR 38.) Plaintiff's testimony in this regard is internally inconsistent. Accordingly, interpretations of this testimony may certainly vary in some respects, and the ALJ's interpretation thereof – that Plaintiff was bending over to feed and otherwise care for small dogs during the alleged disability period – is neither unreasonable nor inaccurate.

Next, Plaintiff argues that "[t]he ALJ further wrongfully inferred that since [Plaintiff] reads 'a lot,' she must be able to concentrate and persist and not be in debilitating pain." (Docket no. 10 at 18 (citing TR 18).) To support this argument, Plaintiff cites *Stennett v. Comm'r of Soc. Sec.* for the principle that a claimant's ability to perform simple, intermittent functions such as dishwashing and floor sweeping is not necessarily indicative of an ability to perform substantial gainful activity. (Docket no. 10 at 18-19 (citing *Stennett*, 476 F. Supp. 2d 665, 672 (E.D. Mich. 2007) (quoting *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967)).) This precedent regarding a claimant's ability to perform simple household chores does not correlate with or support Plaintiff's argument regarding her ability to read. In fact, the Sixth Circuit has held that a claimant's ability to "read for extended periods of time is evidence that she retains the capacity to concentrate and sustain performance." *Alfrey v. Sec'y of Health & Human Servs.*, 960 F.2d

13

149 (Table) (6th Cir. 1992). The ALJ therefore did not err in finding that Plaintiff's ability to read "a lot," indicated that she could maintain concentration, persistence, or pace. And Plaintiff demonstrates no error in the ALJ's conclusion that Plaintiff's ability to maintain concentration, persistence, or pace is inconsistent with her complaints of disabling pain. Accordingly, Plaintiff's Motion should be denied with regard to this issue.

Lastly, Plaintiff argues that the ALJ "totally ignored" Plaintiff's long work history with a single employer in assessing Plaintiff's credibility. (Docket no. 10 at 19.) Plaintiff, however, does not point to any Sixth Circuit precedent that suggests that a claimant with a strong work history is more credible than any other claimant. Although an ALJ may properly consider a claimant's proven motivation to work (or not work) when assessing credibility, it is but one factor to be considered, and "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *See e.g., Felisky*, 35 F.3d at 1041; *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). It is true that the ALJ did not explicitly discuss Plaintiff's prior work history in evaluating Plaintiff's credibility, but she did discuss it during her analysis at step four of the sequential evaluation process regarding whether Plaintiff has the capacity to perform her past relevant work (TR 19), so she was clearly aware that Plaintiff has a strong work record. Accordingly, the ALJ's failure to discuss Plaintiff's work history in the context of her credibility determination does not constitute reversible error.

The above discussion demonstrates that the ALJ set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in her decision, many of which apply the factors set forth in 20 C.F.R. § 404.1529(c)(3) and are properly supported with citations to the record evidence in accordance with SSR 96-7p. Thus, the ALJ's decision is

sufficiently specific to make clear to Plaintiff and to the court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Judgment on the Administrative Record (docket no. 9), **AFFIRM** the Commissioner's final decision, and **DISMISS** Plaintiff's Complaint (docket no. 1) in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.

Dated: April 4, 2018        s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE
                            SITTING BY SPECIAL DESIGNATION